# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KELVIN PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 16–00019–CG–C |
| | ) |
| SAM COCHRAN, as Sheriff of | ) |
| Mobile County, Alabama | ) |
| | ) |
| Defendant. | ) |

## ORDER AND MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion for Summary Judgment and brief in support (Docs. 37, 38, 39), Plaintiff's Response (Doc. 43) and Defendant's Reply (Docs. 48, 49). For the reasons detailed below, the motion is due to be granted.

## I. Background

Plaintiff Kelvin Patterson ("Patterson"), an African-American male, first began working at the Baldwin County, Alabama Sheriff's Office in February 1995 as a deputy. (Doc. 44-1, ¶ 3). In November 2004, he received a promotion to the rank of corporal. *Id.* In the intervening thirteen or so years, Patterson has worked on patrol, in support services in the civil division, and in "intel." (Doc. 39-1, p. 4). The Mobile County Sheriff's Office conducts annual service ratings reports for its officers. The officer receives a ranking from (1) to (4) at the following levels: (1) exceptional job performance, (2) high quality job performance, (3) satisfactory job performance, or (4)

unsatisfactory job performance. (*See, e.g.*, Doc. 39-1, p. 24). In November 2014, Patterson received a rating of "(3) satisfactory job performance" from his supervisor. *Id.* Patterson received verbal coaching on improving his decision-making skills. *Id.* at p. 9. Patterson received the same rating in both November 2013 and 2015. *Id.* at pp. 10,23.

In his complaint, Patterson alleges he was passed over for a promotion to sergeant between December 2015 and February 2017 based on race discrimination and in retaliation for his protected activity. (*See generally* Docs. 1, 18).

**A. Disciplinary Reprimands**

In 2014, Lieutenant Chris Evans, a Caucasian male, became Patterson's line supervisor. (Doc. 1, p. 5). Patterson alleges Lt. Evans harassed him by singling him out, due to his race, over the course of his assignment in his unit. (*See generally* Doc. 1; Doc. 18; Doc. 23). In August 2015, Lt. Evans initiated an internal reprimand against Patterson for "failure to follow orders." (*See* Doc. 39-1, p. 29). The events leading up to this internal disciplinary action concerned a crime report from August 15, 2015, in which Lt. Evans ordered Patterson "to send a couple of cars [to the scene]" and to take necessary action of issuing warrant slips and/or arresting the individuals in question. (Doc. 39-5, p. 3). Patterson did not send the units to respond as directed and admitted he "'failed to follow the crime report properly.'" *Id.* Lt. Evans thus concluded:

> By his own admission, I find that Corporal Kelvin
> Patterson failed to follow policy for the Crime Reports by
> not sending units to check on the situation and by failing
> to report back via email on the findings.
>
> By his own admission, I also find Corporal Patterson
> failed to follow my verbal direct order to send units to the
> address and assess the situation.

*Id.* at p. 4. Lt. Evans recommended Patterson "receive a 'Counseling Statement' for failure to follow policy and verbal orders." *Id.* Captain Frank Cassidy initially concurred in the recommendation, but upon Chief Deputy David Wilhelm's inquiry as to "Patterson's reason(s) for his failure to obey a direct order," Cpt. Cassidy obtained an updated report from Lt. Evans. *Id.* at pp. 3, 6). After the updated report, Cpt. Cassidy concurred with the findings but recommended Patterson receive a "LOR" or Letter of Reprimand, a more severe disciplinary action. *Id.* at p. 4. On September 14, 2015, Defendant Sheriff Sam Cochran issued a letter to Patterson to "serve[] as an official reprimand for your actions on August 15, 2015 as it related to your failure to follow orders given by Lieutenant Chris Evans." (Doc. 39-1, p. 29). Patterson received notice of the LOR on September 21, 2015. *Id.* at p. 30.

On August 26, 2016, Patterson received a second LOR for "attempting to serve a warrant that was no longer active." (Doc. 39-5, p. 10). Lieutenant Roderick Bonner submitted the initial write-up of the offense, and Sheriff Cochran concurred in Lt. Bonner's recommendation for a LOR. *Id.* at p. 15. Patterson fully admitted he "did not verify if [the warrant] was still active—[he] only assumed it still was." *Id.* at p. 19.

3

## B. Patterson's Internal Grievance

On September 21, 2015, Patterson filed an internal grievance against Lt. Evans to Cpt. Cassidy. (Doc. 39-1, p. 28). He claimed Lt. Evans "has continually called me into his office for minimal offenses at the worst and made this a hostile work environment for me." *Id.* He further stated, "Lt. Evans is known to have issues with black supervisors[.]" *Id.* He also alleged his LOR from September 2015 was illegitimate: "Lt. Evans pursued an insubordination reprimand on me which was totally unfair because insubordination is a willful neglect of a direct order which wasn't the case involving a crime report." *Id.*

Cpt. Cassidy conducted an investigation into Patterson's claims that Lt. Evan's reprimand was racially motivated. (Doc. 39-1, p. 11). Cpt. Cassidy spoke with both Patterson and Lt. Evans, collected documentation, and removed Patterson from Lt. Evans's direct supervision. *Id.* at pp. 11–13, 31. After the investigation, the Sheriff's Office concluded "the complaint [was] unfounded" and advised Patterson of his right to appeal to the Personnel Board. *Id.* at p. 31. Patterson appealed, instead, directly to Sheriff Cochran in a "face-to-face meeting" in late October 2015. *Id.* at p. 14, 16. In that meeting, Patterson alleges Sheriff Cochran assured him the September 2015 LOR would not "affect any promotional opportunity" in the Sheriff's Office. *Id.* at p. 15.

## C. Patterson's EEOC Filings

After receiving the Sheriff's Office's decision on his internal grievance against Lt. Evans, Patterson filed an EEOC charge of discrimination (no. 425–2015–01185) on October 1, 2015.[1] (Doc. 39-1, p. 33). In the charge, he alleged he received the LOR "because [he is] Black." *Id.* After not receiving a promotion to sergeant, *see infra*, Patterson filed a second EEOC charge (no. 425–2016–00216) alleging retaliation for his first EEOC charge. (Doc. 39-4, p. 2).

The EEOC issued a Dismissal and Notice of Rights to the first charge on October 16, 2015. (Doc. 1, p. 12). Patterson filed his initial complaint on January 12, 2016, within the ninety-day deadline. (Doc. 1). Patterson alleges the second charge was also dismissed. (Doc. 18, ¶ 10).

**D. The Sergeant Promotions**

The Mobile County Sheriff's Office promoted nine individuals to the rank of sergeant between December 2015 and February 2017. (Doc. 39-3, ¶ 9). These individuals were selected from a pool of fourteen applicants, who were selected by the Mobile County Personnel Board after taking a written test. (Doc. 39-2, p. 22). The successful applicants were ranked according to their written test score, education, and seniority. *Id.* ("60 percent of that score was written test, 20 percent was education, and 20 percent was seniority."). Patterson was ranked number four on the final candidate list. (Doc. 39-8, p. 2). In December 2015, five sergeant positions were available. (Doc. 39-3, ¶ 9).

---

[1] The local EEOC office received the charge on October 1. Patterson dated the charge on September 26, 2015. (Doc. 39-1, p. 33).

5

One more position became available in January 2016, and three positions opened in January and February of 2017. *Id.*

Defendant Sheriff Cochran appointed Chief Deputy Wilhelm, Major Eddy Burroughs, and Director of Human Resources Cynthia Coleman[2] to a panel to interview the applicants for the sergeant position in late November 2015. (Doc. 39-2, pp. 12–13; Doc. 39-3, ¶ 8). Chief Deputy Wilhelm testified both he and Ms. Coleman knew of Patterson's first EEOC charge at the time of the interview. (Doc. 44-2, pp. 6–7). The panel interviewed all fourteen candidates, each for approximately thirty minutes. (Doc. 39-3, ¶ 8; Doc. 29-1, p. 18). The panel further reviewed each candidate's personnel file and discussed the candidates' responses to interview questions. After assessing all of the information, the panel as a whole ranked the candidates "as to who the panel believed were the best qualified based upon their answers to the questions asked at the interview, their presence during the interviews, their demeanor during the interviews[,] and their history as reflected in their personnel file." (Doc. 39-3, ¶ 8; *see also* Doc. 39-2, p. 22). The panel discussed their impressions of all the candidates and provided Sheriff Cochran with a recommendation of who should be promoted. (Doc. 39-2, p. 31). The panel re-ranked Patterson at a lower position based primarily on his performance in the interview. *Id.* at p. 25.

---

[2] Both Chief Deputy Wilhelm and Maj. Burroughs are Caucasian males; Ms. Coleman is an African-American female. (Doc. 39-3, ¶ 8).

6

The interview panel collectively concluded Patterson performed unsatisfactorily in the interviews. Ms. Coleman stated in her affidavit,

> Mr. Patterson had the poorest responses to the questions given during the interview[,] and his overall demeanor was the weakest of all the candidates. Mr. Patterson's responses to the interview questions were indecisive, he rambled[,] and he did not demonstrate the qualities and characteristics needed to be a First Line Supervisor. Patterson had some recent disciplinary issues[,] and his service ratings and achievements were less than those candidates selected.

(Doc. 39-3, ¶ 8). In comparison, the selected candidates "presented themselves better at the interview, gave a clearer and more concise response to the questions[,] and had outstanding and/or exceptional service ratings for the years preceding their selection." *Id*. Chief Deputy Wilhelm testified Patterson "was non responsive to the question" and seemed "not [to] understand the question and would answer in another way" during his interview. (Doc. 39-2, p. 26). Further, he noted several of the promoted candidates had received commendations for their work in the department, such as Deputy of the Year or Deputy of the Month awards. *Id*. at p. 33.

The following corporals were promoted to Sergeant in December 2015: Patrick Bolton (Caucasian male); Terri Hall (African-American female); Richard Murphy (Caucasian male); Frederick Reed (African-American male); and Larry White (Caucasian male). (Doc. 39-3, ¶ 9). Roy Emmons (Caucasian male) received a promotion to sergeant in January 2016, and Davis Smith, Johnny Miller, and Jerry Hurst (all Caucasian males) were promoted in

7

January and February of 2017. *Id.* The same initial list of candidates was used for all promotions in the relevant timeframe. (Doc. 39-2, p. 27). Of the original fourteen candidates, five—including Patterson—did not receive a promotion. (Doc. 39-8, p. 2).

**II. Standard of Review**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to the materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim" or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id.* "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; *accord Mullins v. Crowell*, 228 F.2d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Altanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.2d at

1313; *Clark*, 929 F.2d at 608. "If, however, the movant carries the initial summary judgment burden . . ., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (footnote omitted); *see also* FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."). In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant"—here, Plaintiff Patterson. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

### III. Analysis

Patterson first alleges a claim of race discrimination against Sheriff Sam Cochran for his failure to promote Patterson to sergeant. In his second count, Patterson alleges the Sheriff retaliated against him for filing EEOC complaints about race discrimination. The Court will address each in turn.

Because Patterson does not rely on direct evidence of discrimination, the shifting burden appropriate for cases resting on circumstantial evidence applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In

9

Title VII cases alleging discrimination, the burden is first on the plaintiff to establish a *prima facie* case. If he succeeds, the employer must meet its burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action. The burden then shifts back to the plaintiff-employee to show the employer's proffered reasons are a mere pretext for illegal discrimination. *See, e.g.*, *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.2d 1223, 1228 (11th Cir. 2002); *Jenkins v. National Waterworks, Inc.*, 502 Fed. App'x 830, 831 (11th Cir. 2012).

**A. Race Discrimination**

For the present purposes, Defendant assumes Patterson can establish a prima facie case of race discrimination. The Court, therefore, advances to the second step of the analysis.

*1. Legitimate, Nondiscriminatory Reasons*

Defendant offers the following reasons for not promoting Patterson from corporal to sergeant: (1) the selected candidates performed better in their interviews with the panel; (2) the promoted candidates' service records and annual performance ratings were higher; and (3) the selected candidates lacked disciplinary issues in their personnel file. (Doc. 38, p. 7).

To meet its intermediate burden, a defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support its articulated nondiscriminatory reason "through the introduction of admissible evidence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255

(1981). "[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific . . . . This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Id.* at 258.

Defendant easily carries his burden. The record plainly demonstrates the promoted officers each received higher annual service ratings than Patterson in the two years preceding the promotion. Patterson received a (3) "satisfactory job performance" rating in both November 2014 and 2015. (Doc. 39-1, pp. 23–24). All of the candidates promoted in December 2015 and January 2016 received a rating of (1) "exceptional job performance" or (2) "high quality job performance" in the two review periods prior to their promotion. (*See generally* Doc. 37-9).

Further, deposition and affidavit testimony reveal the interviewing panel, as a whole, believed the other candidates performed better in their respective interviews than Patterson did in his. For example, other candidates provided more succinct, cohesive answers and demonstrated a deeper understanding of the qualities of a sergeant. (*See, e.g.*, Doc. 39-2, p. 24) ("Corporal Bolton responded with answers that were very clear, answers that . . . suggested that he had a very clear understanding of the fundamentals of leadership, of . . . decision making processes, and that he articulated those very well . . . . being able to articulate and to demonstrate

11

a—a full knowledge of—of the issues that were probed by the questions.); Doc. 39-2, ¶ 8 ("Mr. Patterson had the poorest responses to the questions given during the interview and his overall demeanor was the weakest of all the candidates."). In fact, the panel represented Patterson responded to the questions in an "indecisive" manner and failed to "demonstrate the qualities and characteristics needed to be a First Line Supervisor." (Doc. 39-3, ¶ 8; *see also* Doc. 44-2, p. 5 ("The one thing that I do remember is that Corporal Patterson was non responsive to the question. And by that, I mean that he seemed to, in some cases, not understand the question and would answer in another way . . . . And I remember that we discussed that as a panel.")).

Given that only six of the fourteen candidates were promoted in December 2015 and January 2016[3], the reasons Defendant offered as to why it did not promote Patterson to the rank of sergeant are legitimate and nondiscriminatory. The focus of this inquiry thus shifts to pretext.

*2. Pretext*

At the third stage of the analysis, the question is whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 252. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason but must "meet that reason head on and rebut it."

---

[3] Moreover, five of the original fourteen candidates never received a promotion in the two-year period, ending in February 2017. (*See* Doc. 39-8, p. 2).

*Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [persons] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citing *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000)). Further, Patterson must show the disparities between the successful applicants' and his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over the plaintiff." *Cooper v. Southern Co.*, 390 F.2d 695, 732 (11th Cir. 2004), *cert. denied*, 546 U.S. 960 (2005) (citation omitted).

Patterson attempts to prove pretext by claiming he was more qualified based on his past experience as a temporary supervisor and Chief Deputy Wilhelm's racial animus. (Doc. 43, pp. 10–13). As Defendant notes, Patterson's first argument is directly contradicted by Defendant's response to the Request for Admissions. In that document, Patterson stated, "That at least four (4) of the individuals promoted to the rank of Sergeant, between December 1, 2015 and February 17, 2017, have never served in an 'acting' or 'temporary' role as Sergeant." (Doc. 49-1, p. 2; *see also* Doc. 44-2, pp. 3–4). Defendant denied this request for admission but freely admitted Patterson

13

himself had served in an "acting" or "temporary" Sergeant position. (Doc. 49-1, p. 2). Moreover, the Court detects a red herring in this argument: Defendant did not proffer "lack of supervisory experience" or something similar as a reason not to promoted Patterson to sergeant. Rather, it was Patterson's unimpressive interview, lower annual review ratings, and his disciplinary record that served to recommend others over him.

Patterson's suggestion that his service ratings were "based on a more stressful and demanding role as squad leader," thus "making a fair comparison almost impossible," also misses the mark. (*See* Doc. 43, p. 13; *see also* Doc. 44-1, ¶¶ 27–28). As this Court has noted before, "This kind of self-serving, conjectural testimony divorced from the witness's own personal knowledge is not properly considered on summary judgment." *Woods v. Austal, U.S.A., LLC*, No. 09–699–WS–N, 2011 WL 1380054 at *14 n. 42 (S.D. Ala. Apr. 11, 2011) (citing *Rowell v. BellSouth Corp.*, 433 F.2d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to admissible form."). Patterson himself admits Richard Murphy, who was promoted to sergeant in December 2015, had similar leadership experience; it follows, then, that he would be an apt comparator. Sgt. Murphy received a rating of (2) "high quality job performance" for the two years preceding his promotion. (Doc. 39-7, pp. 13–19). As Defendant also admitted, other candidates also served as temporary supervisors before their promotions and maintained higher annual service

14

ratings. (*See* Docs. 44-2, pp. 3–4; 39-7). Thus, Patterson's argument that the annual service ratings cannot be a valid basis for denying his promotion fails.

Next, Patterson argues his letter of reprimand and the entire interview process were colored by Chief Deputy Wilhelm's racial animus. These arguments, however, hold no water. First, Patterson never points to any evidence showing Chief Deputy Wilhelm's dislike of Patterson—if it even exists—relates to or stems from his protected status as an African-American male.[4] Second, Chief Deputy Wilhelm testified the Sheriff's Office removed Patterson from Lt. Evan's line of command as a method to resolve the grievance between Lt. Evans and Patterson. (Doc. 39-2, p. 11). Third, the Chief Deputy, as the corporate representative of the Sheriff's Office, testified

---

[4] In fact, Patterson originally claimed Lt. Evans harbored racial animus against him and "made obscene and animated remarks." (Doc. 1, p. 3; Doc. 23, ¶¶ 4, 6). He also alleged Lt. Evans singled him out by making him stand up to introduce himself to a new employee when all the other Caucasian deputies remained seated. *Id.* at p. 6. He further alleged he "was continually singled out" by Lt. Evans but does not provide any other specific instances involving race as a distinguishing factor. *Id.* at pp. 4–11). In his response brief, however, Patterson admits Lt. Evans did not recommend a letter of reprimand; rather, he recommended the less severe censure of a "counseling statement." (Doc. 43, p. 10). Patterson then claims the letter of reprimand was a conspiracy to punish him shortly before the sergeant promotions by Chief Deputy Wilhelm. *Id.* at pp. 10–11. Nowhere, however, does he connect Lt. Evans's alleged racial animus to Chief Deputy Wilhelm's actions. Further, Patterson cannot change his pleadings or theory of the case through argument at the summary judgment stage. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (having proceeded through discovery without seeking to amend complaint to reflect new theory of cause of action, plaintiff "was not entitled to raise it in the midst of summary judgment").

15

the interview panel worked as a cohesive group to recommend sergeant promotions such that one individual did not control the process. *Id.* at p. 21 ("We sometimes—I don't want to say disagree but we had . . . differing points of view. . . . And I made no effort to—to have the primary role of it. It was for the committee to come to a consensus, and so that it's not my consensus or Major Burroughs' consensus—or Major Burroughs' opinion or Ms. Coleman's opinion alone."). Thus, Patterson has failed to connect any racial animus to the decision not to promote him.

As the Eleventh Circuit has noted, "[p]ersonal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions. Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position." *Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) (citation and internal quotations omitted) (quoting *Chapman*, 229 F.3d at 1033–34)). Generally, "the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext. . . ." *Id.* at 1185. Indeed, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Id.* at 1186. The Court finds Defendant provided a sufficiently specific factual basis for its opinion that other candidates were more qualified for the promotion to

sergeant. As such, the Court concludes the promotion of the other candidates over Patterson, based on the interviewing panel's view of their relative qualifications, was a reasonable business decision. *See Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007). Patterson "has not provided 'sufficient evidence to find that the employer's asserted justification is false'" and thus cannot carry his burden. *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 148 (2000)). For these reasons, Patterson's claim for racial discrimination fails, and Defendant is entitled to summary judgment.

**B. Retaliation**

Patterson also claims Defendant refused to promote him to sergeant in retaliation for filing an internal grievance and two EEOC complaints of discrimination. Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice[.]" 42 U.S.C. § 2000e–3. A plaintiff may prove retaliation based on direct or circumstantial evidence. *See Walker v. Nationsbank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). Patterson's claim relies solely on circumstantial evidence.

A plaintiff may attempt to show retaliation based on circumstantial evidence through the application of the *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Patterson must first raise an inference of retaliation by establishing a *prima facie* case. *See Chapman*, 229 F.3d at 1024 (citing

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997)). To establish a *prima facie* case of retaliation, "the plaintiff must show (1) that [he] engaged in statutorily protected expression; (2) that [he] suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). If a plaintiff makes out the *prima facie* case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). After this stage, the presumption of retaliation disappears, and the burden shifts back to the plaintiff to show the employer's proffered reasons for taking the adverse action were pretext. *Id.*

Defendant does not contest Patterson's ability to meet the *prima facie* case.[5] He relies, however, on the same legitimate, nondiscriminatory reasons as above: namely, that Patterson's interview, lower annual ratings, and disciplinary record weighed against him. (*See* Doc. 38, p. 10). As before, Patterson does not deny Defendant's ability to proffer legitimate,

---

[5] Defendant is less clear in his language to concede Patterson's ability to meet the final element of the claim. He correctly argues the protected speech must be the "but-for" causation behind the adverse action. (*See* Doc. 38, p. 9) (citing *Univ. of Tex. W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.")). He then points to the close temporal proximity between the protected action and the adverse employment action as evidence of element three, causation. *Id.* at pp. 9–10. Thus, the Court concludes Defendant has conceded this point.

18

nondiscriminatory reasons for the adverse action. (Doc. 43, p. 8). Thus, the issues turn on whether these proffered reasons were merely pretext retaliate against Patterson for his internal and EEOC complaints.

*1. Pretext*

"The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (quoting *Combs*, 106 F.3d at 1538).

Patterson notes the interviewing panel had full knowledge of his September 2015 EEOC complaint but fails to explain the significance of this knowledge. (Doc. 43, p. 10). In light of the Supreme Court's recent decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013), this Court must apply a strict but-for causation standard. *See also Shumate v. Selma City Bd. of Edu.*, No. 11–0078–CG–M, 2013 WL 5758699, at *1 (S.D. Ala. Oct. 24, 2013); *contra Shumate v. Selma City Bd. of Edu.*, 928 F. Supp. 2d 1302, 1318 (S.D. Ala. 2013) (applying the prior, more lenient standard that retaliation had occurred if "the protected activity and the adverse action were not wholly unrelated") (internal citation omitted)). Under the stricter *Nassar* standard, Patterson "must present evidence that could lead a reasonable juror to conclude both that [Defendant's] articulated

reasons for not [promoting him] were false and that the real reason was unlawful retaliation." *Shumate*, 2013 WL 5758699 at *1. More specifically, Patterson must prove he "would have gotten the job if the interview panel hadn't discussed [or known about] [his protected activity]." *Id.* at *2. The record evidence, however, does not support this conclusion. Rather, Defendant has provided evidence that the interview panel suggested nine other candidates for promotion because they were better qualified based on their interview responses, annual service ratings, and lack of disciplinary action. Thus, a reasonable jury could not conclude Patterson would have gotten the promotion but for his internal grievance or his EEOC filings. Because Patterson has failed to rebut Defendant's legitimate, nondiscriminatory reasons for not promoting him, his retaliation claim cannot survive the motion for summary judgment.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant Sheriff Sam Cochran's motion for summary judgment (Doc. 37). A separate Judgment will be entered.

**DONE** and **ORDERED** this 3rd day of August, 2017.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE